### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

**ADRIAN GARNER**                                                          **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 3:05CV-P264-S**

**ROBERT ARNOLD** *et al.*                                              **DEFENDANTS**

### MEMORANDUM OPINION

Seeking damages under 42 U.S.C. § 1983 and state law, the plaintiff, by counsel, filed a complaint against the Louisville-Jefferson County Metro government and three Louisville-Jefferson County Metro Corrections Department officers in their individual capacities (DN 1). For the reasons that follow, the instant action will be dismissed.

### I.  SUMMARY OF CLAIMS

At the time the plaintiff filed the complaint, he was incarcerated at the Fayette County Detention Facility (DN 8).[1]  The allegations contained in the complaint, however, occurred while he was incarcerated at the Louisville-Jefferson County Metro Corrections Department ("Metro Corrections").

Factually, the plaintiff alleges that while his hands were handcuffed behind his back on or about January 16, 2005, Defendants Metro Corrections Officers Robert Arnold, Joshua Spenton, and Scott Dejarnette physically assaulted him causing injuries to his face and upper body, shouted racial epithets at him, and "placed [him] in solitary confinement for no reason other than as further means of unlawful abuse."  The plaintiff believes that these three officers

---

[1]While the record does not reveal where or whether the plaintiff is currently incarcerated, the Kentucky Online Offender Lookup System lists an Adrian D. Garner as currently located in the Eastern Kentucky Correctional Complex, with parole recommended during a hearing on December 7, 2005.  *See* http://www.corrections.ky.gov/kool.htm.

have been reprimanded for similar incidents in the past.  As to the municipality's purported

involvement, the plaintiff contends that it failed to provide adequate training to Officers Arnold,

Spenton, and Dejarnette regarding the proper treatment and handling of inmates and further

failed "to properly respond to prior instances of a similar nature" regarding the three named

officers.

As causes of action, the plaintiff lists cruel and unusual punishment, assault and battery,

negligence and vicarious liability, failure to train, negligent supervision, and negligent hiring and

retention.  As relief, he requests compensatory and punitive damages against each of the

defendants as well as recovery of costs, including reasonable attorney fees.

## II. <u>ANALYSIS</u>

### A. <u>42 U.S.C. § 1983</u>

The Prison Litigation Reform Act of 1995 ("PLRA") established an administrative

exhaustion requirement codified at 42 U.S.C. § 1997e(a).  Section 1997e(a) provides, "No action

shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  In enacting this provision, Congress

imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims under

42 U.S.C. § 1983.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The exhaustion of administrative

remedies is now mandatory, rather than discretionary.  *Id.*; *Brown v. Toombs*, 139 F.3d 1102 (6th

Cir. 1998).  "[T]he purpose of the exhaustion requirement is to provide states the first

opportunity to resolve problems themselves, [and] an inmate who has not pursued available

administrative remedies may not yet proceed in federal court."  *Thomas v. Woolum*, 337 F.3d

720, 726 (6th Cir. 2003).

"[A] prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies under 42 U.S.C. § 1997e(a)." *Thomas v. Woolum*, 337 F.3d at 733.  A prisoner "does not exhaust his administrative remedies when he fails to commence the grievance process or to run the gamut of potential appeals," *id.* at 726-27, and he "cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."  *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).  A prisoner must also "administratively exhaust his or her claim as to each defendant associated with the claim," *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003); *Hartsfield v. Vidor*, 199 F.3d at 309, and complete exhaustion of administrative remedies is required even if the administrative process cannot provide the plaintiff with the relief he seeks.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Finally, "the PLRA requires a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims." *Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005) (adopting the total exhaustion rule).

The plaintiff has the burden of pleading exhaustion of administrative remedies. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).  To establish exhaustion of available administrative remedies, a prisoner should attach to the complaint any decision demonstrating the administrative disposition of his claims.  *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d at 1104.  If written documentation is not available, a prisoner must describe with specificity the administrative proceeding and its outcome.  *Knuckles El v. Toombs*, 215 F.3d at 642.  "A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his

complaint must be dismissed *sua sponte*." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002)

(quoting *Knuckles El v. Toombs*, 215 F.3d at 642, and citing *Brown v. Toombs*, 139 F.3d at

1104).

> [A] plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, [must] also not be allowed to amend his complaint to cure the defect. If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run.

*Baxter v. Rose*, 305 F.3d at 489.

In the instant action, the plaintiff has wholly failed to meet his burden of pleading

exhaustion of available administrative remedies as to any of the claims alleged.  The Louisville-

Jefferson County Metro Corrections Department has an inmate grievance procedure in place.[2]

*See* Policy 11.14 (referencing 3-ALDF-3E-11, 501 KAR 3:140, Sec. 6).  Yet, the plaintiff has

failed to attach any grievance to his complaint and has failed to allege that he grieved any of his

claims.  As the asserted claims may not be brought in federal court prior to complete exhaustion

of available administrative remedies, the instant action must be dismissed without prejudice

pursuant to 42 U.S.C. § 1997e(a).  *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004)

("A dismissal under § 1997e should be without prejudice."), *cert. denied*, 125 S. Ct. 1639 (U.S.

Mar. 21, 2005) (No. 04-784).

---

[2]All inmates receive "a written copy and an oral explanation of the Grievance Procedure at Orientation."  An inmate is first required to attempt to resolve a grievance informally.  If the grievance is unable to be resolved informally, the inmate may submit a formal written grievance, first to the Shift Commander for review, then to the appropriate Divisional Director, next to the Lieutenant Colonel, and finally to the Chief/Director of Corrections.  The grievance procedure imposes time limits for resolution at each stage of the process and allows for extensions of those time limits.  Additionally, the grievance procedure provides that "[a]bsent an extension, expiration of response time limits entitles the inmate to move on to the next step in the review process."

4

## B.  **State-law claims**

Finally, the plaintiff advances various state-law tort claims.  Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Because the Court will dismiss all federal claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss those claims without prejudice.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc:   Counsel of Record
4411.005

5